UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | 2:23-CR-00076-DCLC-CRW |
| v. | ) | |
| CHARLES VAUGHN COLLINS, JR., | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant is set for sentencing on May 16, 2024. The United States (the "Government") filed Objections to the Presentence Investigation Report ("PSR"), arguing that: (1) the enhancement for the loss caused by Defendant's conduct under U.S.S.G. § 2B1.1(b)(1) should be six levels instead of four, and (2) Defendant had ten victims, triggering a further two-level enhancement under § 2B1.1(b)(2)(A)(i) [Doc. 46]. Defendant filed a Response [Doc. 54]. The Government later withdrew its objections to the victim count, leaving only the objections to the loss amount [Doc. 55, pg. 1]. For the reasons stated below, the Government's objections to the loss amount are **SUSTAINED**, and Defendant's offense level increases from 13 to 14 after adjusting for acceptance of responsibility [*See* Doc. 40, ¶ 47]. That offense level combines with Defendant's criminal history category of VI to produce a guideline range of 37 to 46 months. His aggravated identity theft conviction adds a mandatory consecutive two-year sentence, *see* 18 U.S.C. § 1028A(a)(1), for an effective guideline range of **61 to 70 months**.

**I.    BACKGROUND**

Working under the aliases "Red" and "Black," Defendant and a co-conspirator recruited co-defendant Anthony Stegall ("Stegall") to carry out a scheme to cash fraudulent checks at

1

various banks [Doc. 40, ¶ 21]. On January 27, 2023, Stegall successfully cashed fraudulently altered checks in amounts of $983.14 and $908.14 at branches of Home Federal Bank ("Home Federal") in Knoxville and Maryville Tennessee [Doc. 40, ¶ 29]. Also on January 27, 2023, Stegall cashed a forged check for $1,250 at a TN bank in Maryville [Doc. 40, ¶¶ 30–31].

According to Stegall, Defendant and "Black" picked him up on January 31, 2023 to drive to Erwin, Tennessee [Doc. 40, ¶¶ 23–24]. They arrived at a Mountain Commerce Bank ("MCB") branch where Defendant instructed Stegall to cash a forged $2,816.04 check from Signature Enterprise LLC ("Signature Title") [Doc. 40, ¶¶ 13, 24]. The branch contacted Signature Title and refused to cash the check [Doc. 40, ¶ 13]. Defendant and Stegall continued to an MCB branch in Unicoi, Tennessee where they attempted to cash a $2,800 check [Doc. 40, ¶ 13]. Police arrived and arrested Stegall [*Id.*].

Defendant fled, and law enforcement pursued [Doc. 40, ¶ 14]. He wrecked the vehicle he was driving, and police recovered, among other items, 29 paper checks [*Id.*]. Some checks were completed; others were blank [*Id.*]. The completed checks totaled $29,605.84 [*Id.* n. 1]. The parties have stipulated that there were eleven blank checks in total [Doc. 58].

On December 7, 2023, Defendant pleaded guilty to one count of conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 1349 and 1344(2); and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) [Doc. 29, ¶ 1; Doc. 31]. The PSR was disclosed on February 29, 2024 [Doc. 40]. It found Defendant responsible for an actual loss of $3,141.28 based on the three checks Stegall cashed on January 27, 2023 [Doc. 40, ¶ 31]. The PSR further calculated Defendant's intended loss by adding the amount of the two checks Stegall unsuccessfully attempted to pass in Erwin and Unicoi to the total amount of completed, uncashed checks found in Defendant's vehicle [Doc. 40, ¶ 31]. Thus, the PSR found the intended loss was $35,221.88

2

[Doc. 40, ¶ 31]. It did not attempt to calculate intended loss based on the blank checks. Based on the calculated intended loss of $35,221.88, the PSR recommended an enhancement of 4 levels, citing U.S.S.G. § 2B1.1(b)(1)(C) [Doc. 40, ¶ 39].

Based on a total offense level of 13 and criminal history category VI, the PSR calculated Defendant's guideline range to be 33 to 41 months [Doc. 40, ¶ 93]. Together with the mandatory two-year consecutive sentence from his aggravated identity theft conviction, the effective guideline range was 57 to 65 months [*Id.*]. The present objections followed.

## II. ANALYSIS

The Government objects to seven numbered paragraphs of the PSR [Doc. 46]. Its objections fall into three categories. First, the Government contends the "loss" enhancement under § 2B1.1(b)(1) should be six levels instead of four [Doc. 46, ¶¶ 1, 3]. Second, it argues the PSR should have found that Defendant had at least ten victims, triggering a two-level enhancement under § 2B1.1(b)(2)(A)(i) [Doc. 46, ¶¶ 2, 4]. Third, based on the foregoing, the Government asserts the PSR improperly calculates Defendant's offense level and guideline range [Doc. 46, ¶¶ 5–7]. The Court addresses the Government's objections paragraph by paragraph.

### A. Paragraph 31

The Government objects to paragraph 31, arguing that the PSR should have estimated the loss Defendant intended to inflict using the blank checks found in his vehicle [Doc. 46, ¶ 1]. Under U.S.S.G. § 2B1.1, the Court must calculate the "loss" attributable to theft, fraud and related offenses. U.S.S.G. § 2B1.1(b)(1). If the loss exceeds $15,000 but is less than $40,000, the defendant's offense level increases by 4. *Id.* § 2B1.1(b)(1)(C)–(D). If the loss exceeds $40,000 but is less than $95,000, the enhancement is 6 levels. *Id.* § 2B1.1(b)(1)(D)–(E). The loss calculated under the guideline "is the greater of actual loss or intended loss." *Id.*, Application Note

3

3(A). But "[t]he court need only make a reasonable estimate of the loss." *Id.*, Application Note 3(C).

Here, the Government contends that including the intended loss from blank checks would push the estimate over the $40,000 threshold [*See* Doc. 46, ¶¶ 1, 3]. It argues the Court should estimate that loss by multiplying the number of blank checks by the average value of the completed checks [Doc. 46, ¶ 1, pg. 2]. It cites *United States v. Wade*, 266 F.3d 574 (6th Cir. 2001) [*Id.*]. In *Wade*, the Sixth Circuit upheld the district court's estimate which it found by "multiplying the average amount of the counterfeit checks passed by the number of blank counterfeit checks . . . discovered at [the defendant's] residence." 266 F.3d at 585. To be sure, the method for estimating the intended loss attributable to blank checks was not at issue in *Wade*. *See id.* Instead, the defendant asserted—unsuccessfully—that the court could not include actual losses in its estimate of intended loss. *See id.* at 586.[1] But even if the formula was not at issue, other circuits have approved formulas like the one described in *Wade*. *See, e.g.*, *United States v. Goodson*, 64 F. App'x 889, 891 (4th Cir. 2003) (upholding an estimate reached by "multipl[ying] the average check amount by the number of blank checks found in [the defendant's] possession"); *United States v. Chappell*, 6 F.3d 1095, 1101 (5th Cir. 1993) (upholding district court's estimate "assigning to [blank checks] the average value of the other checks actually produced and negotiated."). Under the facts of this case, the Court finds that including in the total loss the product of the average check amount and the number of blank checks accurately reflects the intended loss. Applying the formula in this case requires the Court to determine the average value of the completed checks and

---

[1] The Sixth Circuit also held that the district court erred by failing to analyze intended losses under *United States v. Watkins*, 994 F.2d 1192 (6th Cir.1993). *See* 266 F.3d at 586. But the Sentencing Commission has since abrogated *Watkins* by amending the pertinent guideline. *See United States v. Younes*, 194 F. App'x 302, 316 (6th Cir. 2006).

4

the number of blank checks. As the parties have stipulated, there were 11 blank checks [*See* Doc. 58].

As to the value of the completed checks, the PSR states Defendants successfully cashed 3 forged checks for a total amount of $3,141.28 [Doc. 40, ¶ 31]. Defendants also failed to pass completed checks in a total amount of $35,221.88, [Doc. 40, ¶ 31], of which the Government asserts there were 31 [Doc. 46, ¶ 1, pg. 3].[2] Adding it all up, there were 34 checks in a total amount of $38,363.16, for an average intended loss of $1,128.33 per check. Multiplying that average by the 11 blank checks Defendant possessed yields an intended loss estimate of $12,411.61 from blank checks.[3] Adding that amount to the current estimate yields an intended loss of $35,221.88 + $12,411.61 = **$47,633.49**.

Defendant does not explain why the Court should not apply this formula to estimate the loss he intended to inflict from blank checks [*See* Doc. 54]. He asserts the $3,141.28 and $35,221.88 amounts from completed checks "were contemplated and agreed to by [Defendant] in . . . his plea agreement" [Doc. 54, pgs. 1–2], but so were the blank checks [*See* Doc. 29, ¶ 4(f)]. The Government's objection is **SUSTAINED**.

---

[2] Elsewhere in its Objections, the Government states there were thirty-three completed checks [Doc. 46, ¶ 1, pg. 2]. But the PSR states law enforcement recovered 29 checks from Defendant's vehicle and that Defendants unsuccessfully attempted to pass two others [Doc. 40, ¶¶ 13–14]. Thus, the correct number appears to be 31.

[3] The actual figure may be even higher. The Government assumes there were 31 total completed, uncashed checks [*See* Doc. 46, ¶ 1, pg. 3]. Presumably, the Government bases that figure on the 29 checks law enforcement recovered from Defendant's vehicle, [*see* Doc. 40, ¶ 14], plus the 2 checks Defendants unsuccessfully attempted to pass in Erwin and Unicoi [*See* Doc. 40, ¶ 31]. But the PSR notes that some of the checks recovered from Collins' vehicle were blank, not completed [*See* Doc. 40, ¶ 14]. That means the number of completed checks may be lower than the 31 the Government assumes, so the actual average value of the completed checks may be higher, resulting in a greater intended loss attributable to the blank checks. However, as explained below, even the Government's conservative estimate still results in an increase to Defendant's offense level.

B.   **Paragraph 32**

The Government objects to paragraph 32, arguing the PSR should have included J.S. as a victim [Doc. 46, ¶ 2]. However, the Government has since withdrawn this objection [*See* Doc. 55, pg. 1]. Thus, the objection is **OVERRULED AS MOOT**.

C.   **Paragraph 39**

The Government argues paragraph 39 improperly applies a four-level enhancement based on the calculated loss amount [Doc. 46, ¶ 3]. The Government asserts that in addition to estimating the loss Defendant intended from blank checks, the PSR should have counted the $3,141.28 from checks Defendants successfully cashed as an intended loss [Doc. 46, ¶ 3]. Defendant's own estimate incorporates that amount [*See* Doc. 54, pg. 1]. When a defendant has successfully passed forged checks, the defendant "[o]f course . . . subjectively intended to inflict the losses . . . ." *Wade*, 266 F.3d at 586. Adding the $3,141.28 to the $47,633.49 estimate indicated above, the total intended loss from Defendant's conduct was **$50,774.77**. That exceeds the $40,000 threshold for a six-level increase under § 2B1.1(b)(1). Thus, the Government's objection is **SUSTAINED**. An enhancement of six levels, rather than four, applies.

D.   **Paragraph 41**

The Government objects to paragraph 41, arguing a two-level enhancement should apply because Defendant had ten or more victims [Doc. 46, ¶ 4]; *see* U.S.S.G. § 2B1.1(b)(2)(A)(i). Again, the Government has withdrawn this objection, so it is **OVERRULED AS MOOT**.

E.   **Paragraphs 44, 47, and 93**

The remaining objections relate to the calculation of Defendant's guideline range in light of the Government's objections. Because the Court has sustained the Government's objections to the loss amount calculation, the Court **SUSTAINS** these three objections as well and recalculates

6

Defendant's guideline range accordingly.

The additional two levels from § 2B1.1(b)(1)(D) raise Defendant's Adjusted Offense Level from 15 to 17 before applying acceptance of responsibility [*See* Doc. 40, ¶ 44]. Under U.S.S.G. § 3E1.1, if a defendant qualifies for the automatic two-level reduction for accepting responsibility and has an offense level of 16 or higher, then "upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct . . . , [the Court must] decrease the offense level by 1 additional level." U.S.S.G. § 3E1.1(b). Here, Defendant's offense level of 17 qualifies him for the additional one-level reduction for acceptance of responsibility, as the Government notes in its Objections [*See* Doc. 46, pg. 5 n. 3]. Thus, his acceptance of responsibility reduces his offense level from 17 to 14. Combined with a criminal history category of VI, [*see* Doc. 40, ¶ 63], his guideline range is 37 to 46 months. *See* U.S.S.G. Ch. 5, Pt. A, Sentencing Table. His aggravated identity theft conviction adds a mandatory consecutive two-year sentence, for an effective guideline range of **61 to 70 months**.

### III. CONCLUSION

For the reasons stated herein, the Government's objections to PSR paragraphs 31, 39, 44, 47, and 93 are **SUSTAINED**. Its objections to paragraphs 32 and 41 are **OVERRULED AS MOOT**.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge